UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| VICTORIA M. BRIDGEFORTH, | ) | |
| | ) | |
| Plaintiff, | ) | 14 C 4443 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| COOK COUNTY, ILLINOIS, and THOMAS J. DART, | ) | |
| | ) | |
| Defendants. | ) | |

**M<small>EMORANDUM</small> O<small>PINION AND</small> O<small>RDER</small>**

Victoria Bridgeforth brought this suit against Cook County, Illinois and Cook County Sheriff Thomas Dart, alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Doc. 21. Defendants have moved for summary judgment. Doc. 35. The motion is granted.

**Background**

The following facts are set forth as favorably to Bridgeforth as the record and Local Rule 56.1 permit. *See Hanners v. Trent*, 674 F.3d 683, 691 (7th Cir. 2012). On summary judgment, the court must assume the truth of those facts, but does not vouch for them. *See Smith v. Bray*, 681 F.3d 888, 892 (7th Cir. 2012).

Bridgeforth works as a corrections officer at Cook County Jail. Doc. 48 at ¶ 1. Dart is the Sheriff of Cook County. *Id*. at ¶ 3. This suit arises primarily from three incidents involving Bridgeforth's supervisor, Sergeant Yolanda Windmon. *See id*. at ¶ 7.

The first incident occurred on September 14, 2012, when Bridgeforth was working in the Jail lobby. *Id*. at ¶ 8; Doc. 37-3 at 16-17. When Bridgeforth asked for Windmon's identification, Windmon responded, "I showed you already, Damn." Doc. 48 at ¶ 8. Bridgeforth

1

then searched Windmon with a metal-detecting wand, which alerted in response to the aluminum foil wrapped around her food. *Ibid*. Although Bridgeforth informed Windmon that the foil was contraband and that she could not enter the Jail with it, Windmon did so anyway. *Ibid*. Windmon later returned and put the food behind Bridgeforth's head and ignored her request to remove it. *Ibid*.; Doc. 37-3 at 17.

The second incident—yes, the description of the first incident is finished—occurred on March 5, 2013, again while Bridgeforth was on lobby duty. Doc. 48 at ¶ 9. Bridgeforth "wanded" Windmon, who complained to Bridgeforth and the shift commander that she was the only person asked to show her ID. *Ibid*.; Doc. 37-3 at 18. Upon seeing Bridgeforth later, Windmon yelled, "These devils, these devils, look at these devils." Doc. 48 at ¶ 9. There were several other negative encounters between the two in the lobby. Doc. 47 at ¶ 6.

The third incident—and yes, the description of the second incident is finished—occurred on March 20, 2013. Doc. 48 at ¶ 10. While Bridgeforth was inspecting the wall calendar in Commander Hall's office, Windmon hit her in the back. *Ibid*. Bridgeforth does not know which part of Windmon's body touched her. *Id*. at ¶ 11. Bridgeforth says she was pushed; Defendants say that Windmon was unaware Bridgeforth was even in the office and accidentally bumped into her. *Id*. at ¶¶ 18-19; Doc. 50 at ¶ 1; Doc. 37-3 at 4; Doc. 37-4 at 11-12. Bridgeforth's version is credited on summary judgment. Windmon said, "I'm sorry," but had a smile on her face. Doc. 48 at ¶ 10; Doc. 37-3 at 4. Windmon added, "I apologized for my actions. You don't have to look at me like that," and then yelled repeatedly, "Are you threatening me?" Doc. 47 at ¶ 3; Doc. 48 at ¶ 10. Bridgeforth complained to Commander Hall about the incident before returning to her assignment. Doc. 48 at ¶ 13; Doc. 37-3 at 7. Windmon stuck out her tongue at Bridgeforth several times after the push. Doc. 48 at ¶ 13.

2

Following this encounter, Bridgeforth and Windmon filed complaints with the Sheriff's Office of Professional Review, which were investigated and not sustained. *Id*. at ¶ 14; Doc. 37-6; Doc. 37-7. Windmon was removed from Bridgeforth's division at the Jail for some period and no longer supervises Bridgeforth. Doc. 48 at ¶¶ 15, 22. A few months later, Bridgeforth bid for and transferred to a different assignment. Doc. 47 at ¶ 7; Doc. 37-3 at 14. Bridgeforth has not been terminated, suspended, or demoted. Doc. 48 at ¶ 6. While she continues to work overtime, Bridgeforth requests less overtime since Windmon pushed her on March 20, 2013. Doc. 47 at ¶ 9; Doc. 48 at ¶ 28. Bridgeforth took Aleve for pain in her upper back and met with peer support counseling personnel to alleviate what she claims to be emotional distress. Doc. 47 at ¶¶ 1, 10.

The parties dispute whether Windmon singled out female officers for adverse treatment. Bridgeforth could not name any male employees similarly situated to her who did not suffer comparable unpleasantness from Windmon. Doc. 48 at ¶ 30. Bridgeforth testified that other female officers, all but one of whom she could not name, told her that Windmon had harassed them by, among other things, pushing them or driving at them in the parking lot. Doc. 47 at ¶ 4; Doc. 48 at ¶ 29. The relevant portion of Bridgeforth's deposition testimony reads as follows:

> Q. All right. What information do you have that other male officers and deputies haven't been treated—subjected to the same abuse and harassment as you claim to have been? What information do you have?
>
> A. From the time that this incident occurred, the last one, officers have been calling me telling about the incidents they had with Sergeant Windmon, and all of them have been with females. …
>
> Q. What are the names of the other officers who called you about Sergeant Windmon?
>
> A. Melissa Medina is one. I can't remember them offhand, but I do have it written down.

> Q. What other incidents did these other officers complain about Sergeant Windmon to you?
>
> A. The same way that I was, you know, hit in the back, they were too. I know one of them stated that she tried to run them over in the parking lot with her car, her vehicle.
>
> Q. Who said that?
>
> A. I have the names, but I can't really remember offhand.

Doc. 37-3 at 10.

Defendants argue that this testimony is inadmissible hearsay. Doc. 36 at 8. "A party may not rely on inadmissible hearsay to avoid summary judgment." *MMG Fin. Corp. v. Midwest Amusements Park, LLC*, 630 F.3d 651, 656 (7th Cir. 2011); *see also Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997) ("hearsay is inadmissible in summary judgment proceedings to the same extent that it is inadmissible in a trial"); *Wigod v. Chi. Mercantile Exch.*, 981 F.2d 1510, 1519 (7th Cir. 1992) ("[t]o be considered" at summary judgment, "statements by the unidentified parties must either be non-hearsay pursuant to Federal Rule of Evidence 801, or must qualify for a hearsay exception pursuant to Federal Rule of Evidence 803"). Bridgeforth makes no argument as to why the female officers' comments to her about Windmon should be admitted despite being out-of-court statements offered for their truth. Any such argument accordingly is forfeited, and the evidence is inadmissible. *See G & S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court.") (citations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument … but also to a litigant's failure to advance a specific point in support of a general argument …."); *Russell v. Acme-Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995) (deeming evidence "concerning racial slurs allegedly made by white supervisors

to other black workers" inadmissible because it was "not claimed to fall within any of the myriad exceptions to the hearsay rule, and hence could not be considered in the summary judgment proceeding").

Defendants are correct in any event. It is possible for a co-worker's out-of-court statement to fall outside the hearsay rule under Federal Rule of Evidence 801(d)(2)(D), which provides that a statement is not hearsay if it "is offered against an opposing party and … was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." An employee's statement qualifies for this exception only if her "duties … encompass[ed] some responsibility related to the decisionmaking process affecting the employment action." *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011) (internal quotation marks omitted); *see also Stephens v. Erickson*, 569 F.3d 779, 793 (7th Cir. 2009) ("For an agent's statement regarding an employment action to constitute an admission, she need not have been personally involved in that action, but her duties must encompass some responsibility related to the decisionmaking process affecting the employment action.") (internal quotation marks omitted); *Young v. James Green Mgmt., Inc.*, 327 F.3d 616, 622 n.2 (7th Cir. 2003). There is no evidence that any of the female officers with whom Bridgeforth spoke were involved in the decisonmaking process concerning the terms and conditions of their own or Bridgeforth's employment. Because their out-of-court statements concerned matters outside the scope of their employment, their testimony does not qualify as admissible non-hearsay. *See Stephens*, 569 F.3d at 793-94 (excluding an administrative assistant's hearsay statements because she possessed no authority to supervise, manage, review, promote, hire, fire, or recommend that any employment action be taken); *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 949-50 (7th Cir. 1998) (excluding hearsay statements from five other female employees that they had been

harassed because "[n]one of the women were agents of Pharmacia for the purpose of making managerial decisions affecting the terms and conditions of their own employment").

Bridgeforth also claims she personally observed that Windmon directed her harassing conduct only at females and not at males. Doc. 47 at ¶ 5. In support, Bridgeforth cites the following portion of her deposition:

> Q. Okay. Number 15 on Page 3. It's on the next page on the top there in Number 15. It says, "Similarly situated male employees of Respondent were not and are not subjected to the same scrutiny, harassment and discipline as Complainant was subjected to by Sergeant Windmon and the other supervisory personnel identified hereinabove." What does that— first of all, who are the similarly situated male employees of Respondent? I need some names that that refers to.
>
> A. Males? I mean I can't really give you any names offhand as well as like I couldn't give you any names at the time then. Okay?
>
> Q. Okay. And it says, "are not subjected to the same scrutiny, harassment, and discipline as Complainant was subjected to by Sergeant Windmon and the other supervisory personnel identified hereinabove." What does that refer to, "the same scrutiny, harassment and discipline"?
>
> A. Just giving me a hard time as far as like lunch reliefs. They would be notified of their lunch relief, but then someone would just pop up and show up at my door. And they're like, "Oh, I'm here for your lunch relief, and I'm like, Well, I wasn't notified. Let me call and check because I can't just go off of word of mouth of an officer. The sergeant or whoever's doing lunch reliefs is suppose to notify you. So …
>
> Q. Other than that, other than what you just described, anything else regarding scrutiny, harassment and discipline?
>
> A. She doesn't really bother the males. It's more the females.
>
> Q. Okay. But I want you to explain to me what the term "same scrutiny, harassment and discipline as Complainant was subjected to". What specifically does that refer to?
>
> A. Just the things that she does.
>
> Q. You have to be specific.

>   A. I mean—I mean I told you about the lunches. Giving you a hard time just doing your job, period. Don't want to show her ID. Basically, say, just from what the other female officers told me, you know, basically what she does to them, and as far as that, meaning that—like I told you, the one that she tried to run over with the vehicle or the one that she, you know, hit in the back or—I mean just different situations.
>
>   Q. Regarding—again, going back. I'm going to ask you the same question again. You can't identify who those officers were?
>
>   A. Not at this time, sir, no.

Doc. 37-3 at 15-16. This testimony does not support the proposition that Bridgeforth has first-hand knowledge of Windmon treating female employees worse than males. In light of all the record evidence, Bridgeforth's assertion that Windmon "doesn't really bother the males" clearly is based on what her female co-workers told her—which, as noted above, is inadmissible hearsay—and not on her personal observation.

Given this, the summary judgment record does not support Bridgeforth's assertions that Windmon singled out women for disfavored treatment. Accordingly, those assertions in Bridgeforth's Local Rule 56.1 materials are disregarded.

## Discussion

A Title VII plaintiff faced with a summary judgment motion may proceed under either the direct method or the indirect method. *See Simpson v. Beaver Dam Cmty. Hosps., Inc.*, 780 F.3d 784, 789-90 (7th Cir. 2015); *Andrews v. CBOCS W., Inc.*, 743 F.3d 230, 234 (7th Cir. 2014). "Whether the plaintiff proceeds by the direct or indirect method of proof, [she] must show a materially adverse employment action." *Rhodes v. Ill. Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *see also Andrews*, 743 F.3d at 234-35 (same); *Nichols v. S. Ill. Univ.-Edwardsville*, 510 F.3d 772, 779 (7th Cir. 2007) (same). "A materially adverse employment action is something more disruptive than a mere inconvenience or an alteration of job

responsibilities. While adverse employment actions extend beyond readily quantifiable losses, not everything that makes an employee unhappy is an actionable adverse action. Otherwise, minor and even trivial employment actions that an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit." *Nichols*, 510 F.3d at 780 (citations and internal quotation marks omitted). The Seventh Circuit has recognized three categories of materially adverse employment actions:

> (1) cases in which the employee's compensation, benefits or other financial terms of employment are diminished, including cases where employment is terminated; (2) cases in which a nominally lateral transfer without a change in financial terms significantly reduces the employee's career prospects by preventing him from using the skills in which he is trained and experienced; and (3) [c]ases in which the employee is not moved to a different job or the skill requirements of his present job altered, but the conditions in which he works are changed in a way that subjects him to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment.

*Tart v. Ill. Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004) (alteration in original) (internal quotation marks omitted); *see also Dass v. Chi. Bd. of Educ.*, 675 F.3d 1060, 1069 (7th Cir. 2012) (same); *Nichols*, 510 F.3d at 780 (same).

Defendants correctly argue that a reasonable jury could not find that Bridgeforth suffered a materially adverse employment action. Doc. 36 at 5. Bridgeforth continues to work as a corrections officer with the same job duties she had prior to the incidents with Windmon. Doc. 48 ¶¶ 2, 6. Although the denial of overtime can constitute an adverse employment action, *see Lewis v. City of Chicago*, 496 F.3d 645, 654 (7th Cir. 2007), Bridgeforth was not *denied* the opportunity for more overtime—she *herself* chose to work less overtime than she had in the past. Moreover, Bridgeforth adduces no evidence as to how much less overtime she worked or when she declined to work overtime, leaving the court with no basis to evaluate the degree to which her compensation was affected, which is an essential consideration in determining whether she

8

suffered a materially adverse employment action. *See ibid*. (distinguishing between overtime that is "a significant and recurring part of an employee's total earnings similar to a recurring raise" and overtime that is "insignificant and nonrecurring like a discretionary bonus"); *Conley v. Vill. of Bedford Park*, 215 F.3d 703, 711 (7th Cir. 2000) (affirming the district court's grant of summary judgment on an overtime claim because the plaintiff failed to set forth any specific times that he was denied overtime); *Bennett v. Potter*, 2011 WL 1231166, at *7-8 (N.D. Ill. Mar. 30, 2011) (finding no adverse employment action where the Title VII plaintiff "testifie[d] in her deposition that she had been denied overtime four or five times, but … was unable to say specifically when that occurred") (internal quotation marks omitted).

Bridgeforth's harassment allegations could be construed as a hostile work environment claim, which could possibly fit within the third general category of materially adverse employment actions. *See Herrnreiter v. Chi. Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) (holding that the third category includes "cases of harassment-mistreatment of an employee by coworkers or supervisors that is sufficiently severe to worsen substantially his conditions of employment as they would be perceived by a reasonable person in the position of the employee") (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 786-88 (1998)). "To avoid summary judgment on a hostile work environment claim, a plaintiff must provide sufficient evidence to create a genuine issue of material fact as to four elements: (1) the work environment must have been both subjectively and objectively offensive; (2) her gender … must have been the cause of the harassment; (3) the conduct must have been severe or pervasive; and (4) there must be a basis for employer liability." *Chaib v. Indiana*, 744 F.3d 974, 985 (7th Cir. 2014); *see also Milligan*, 686 F.3d at 383. A workplace rises to the level of an objectively hostile work environment only if it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe

or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 982 (7th Cir. 2014).

The third element of a hostile work environment claim "is in the disjunctive—the conduct must be *either* severe *or* pervasive." *Vance v. Ball State Univ.*, 646 F.3d 461, 469 (7th Cir. 2011). This means that "one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." *Hall v. City of Chicago*, 713 F.3d 325, 330 (7th Cir. 2013). A court addressing this element must "look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 343 (7th Cir. 2001) (internal quotation marks omitted); *see also Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 647 (7th Cir. 2011). In so doing, the court must bear in mind that Title VII does not impose a "general civility code" in the workplace and that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher*, 524 U.S. at 788 (citation and internal quotation marks omitted); *see also McPherson v. City of Waukegan*, 379 F.3d 430, 438 (7th Cir. 2004).

Windmon's actions, considered together, are insufficient to support a hostile work environment claim. The Seventh Circuit

> ha[s] on many occasions distinguished between harassing and merely objectionable conduct. *See*, *e.g.*, *Hilt-Dyson [v. City of Chicago]*, 282 F.3d [456,] 463-64 [(7th Cir. 2002)] (holding that plaintiff's allegations that supervisor rubbed her back, squeezed her shoulder and stared at her chest during a uniform inspection while telling her to raise her arms and open her blazer were isolated incidents that, even when taken together, did not create a sufficient inference of a hostile work environment); *Patt v. Family Health Sys., Inc.*, 280 F.3d 749, 754 (7th Cir. 2002) (holding that plaintiff's

> complaints of eight gender-related comments during course of her employment, including that "the only valuable thing to a woman is that she has breasts and a vagina," insufficient to demonstrate hostile work environment); *Adusumilli v. City of Chicago*, 164 F.3d 353, 361-62 (7th Cir. 1998) (finding plaintiff's complaints of teasing, ambiguous comments about bananas, rubber bands and low-neck tops, staring and attempts to make eye contact and four isolated incidents where a co-worker briefly touched her arm, fingers or buttocks did not constitute sexual harassment). With these precedents in mind, we conclude that the incidents that occurred prior to Copenharve's physical assault of McPherson on March 21, 2001, although boorish, do not constitute the severe or pervasive conduct necessary to create an objectively hostile work environment in violation of Title VII. While Copenharve's inquiries about what color bra McPherson was wearing, his suggestive tone of voice when asking her whether he could "make a house call" when she called in sick and the one occasion when he pulled back her tank top with his fingers were lamentably inappropriate, we agree with the district court that, due to the limited nature and frequency of the objectionable conduct, a hostile work environment did not exist until the March 21, 2001 assault.

*McPherson*, 379 F.3d at 438-39.

Even construing the record in the light most favorable to Bridgeforth, the acts of which she complains lack the severity or pervasiveness needed to establish a hostile work environment. There is no evidence that Windmon and Bridgeforth's interactions occurred with such regularity that they altered the terms and conditions of Bridgeforth's employment. Nor does the record indicate that they unreasonably interfered with Bridgeforth's work performance. *See Bilal v. Rotec Indus., Inc.*, 326 F. App'x 949, 958 (7th Cir. 2009) ("Bilal's testimony, that despite Oury's inappropriate conduct, she was able to do her job effectively and had no desire to leave her job at the time she was terminated, lends some support to our conclusion that these three incidents were not sufficiently severe so as to alter the conditions of her employment and create an abusive working environment."); *Mannie v. Potter*, 394 F.3d 977, 983 (7th Cir. 2005) (granting summary judgment for the defendant on a hostile work environment claim, in part because the plaintiff offered no proof that she "was unable to perform her job because of the conduct of her supervisors and co-workers").

The unpleasant interactions between Windmon and Bridgeforth in the lobby are not even remotely severe. A slightly closer question concerns whether the push in Commander Hall's office is sufficiently severe to be actionable. The Seventh Circuit has explained that physical contact "lies along a continuum" for purposes of evaluating its severity:

> There are some forms of physical contact which, although unwelcome and uncomfortable for the person touched, are relatively minor. Cumulatively or in conjunction with other harassment, such acts might become sufficiently pervasive to support a hostile environment claim, but if few and far between they typically will not be severe enough to be actionable in and of themselves. … Even more intimate or more crude physical acts—a hand on the thigh, a kiss on the lips, a pinch of the buttocks—may be considered insufficiently abusive to be described as "severe" when they occur in isolation.

*Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 808 (7th Cir. 2000). Bridgeforth was pushed once when her back was turned. Although Bridgeforth took a painkiller afterwards, there is no evidence that she sustained any serious injury. Given that it happened just once, the push is insufficiently severe to establish a hostile work environment claim. *See Bilal*, 326 F. App'x at 958 ("[Defendant's] alleged act of taking a chocolate out of his mouth and placing it in Bilal's, while bizarre and disgusting, was 'middle-of-the-continuum' physical contact which, because it occurred in relative isolation, cannot be regarded as severe under the existing case law."); *McPherson*, 379 F.3d at 439 (finding no hostile work environment where the plaintiff's supervisor pulled back her tank top to see her bra); *cf. Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998) ("Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview. We have always regarded that requirement as crucial, and as sufficient to ensure that courts and juries do not mistake ordinary socializing in the workplace—such as male-on-male horseplay or intersexual flirtation—for discriminatory conditions of employment.") (citations and internal quotation marks omitted).

Accordingly, because the acts of which Bridgeforth complains are not objectively severe or pervasive, they cannot support a hostile work environment claim. And with no hostile work environment claim, Bridgeforth has no materially adverse employment action, which means that she has no viable Title VII claim.

There is a separate and independent ground for summary judgment: Bridgeforth cannot establish that Windmon's conduct towards her was due to Bridgeforth's being female. Bridgeforth attempts to forestall summary judgment under both the direct and indirect methods of proof, but "[w]hatever evidentiary route the plaintiff chooses to follow, … she must always prove that" the conduct at issue "actually constituted '*discrimina[tion]* … because of … sex.'" *Oncale*, 523 U.S. at 81 (alterations in original); *see also Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012) (explaining that evidence submitted under the indirect method must "permit a reasonable juror to infer, in light of all the circumstances, that an impermissible animus motivated the employer's decision").

"Under the 'direct method,' the plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that the employer's discriminatory animus motivated an adverse employment action." *Coleman*, 667 F.3d at 845. The appropriate focus under the direct method "is not whether the evidence offered is direct or circumstantial but rather whether the evidence points directly to a discriminatory reason for the employer's action." *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008) (internal quotation marks omitted); *see also Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013) ("The plaintiff's task in opposing a motion for summary judgment is straightforward: he must produce enough evidence, whether direct or circumstantial, to permit the trier of fact to find that his employer took an adverse action against him because of his race."); *Everett v. Cook Cnty.*, 655 F.3d 723, 729 (7th Cir. 2011);

*Davis v. Time Warner Cable of Se. Wis., L.P.*, 651 F.3d 664, 672 (7th Cir. 2011). "Direct evidence is evidence that, if believed by the trier of fact, would prove discriminatory conduct on the part of the employer without reliance on inference or presumption. In short, direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Rhodes*, 359 F.3d at 504 (citations and internal quotation marks omitted); *see also Morgan*, 724 F.3d at 995; *Coleman*, 667 F.3d at 860; *Everett*, 655 F.3d at 729.

"A plaintiff can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker. That circumstantial evidence, however, must point directly to a discriminatory reason for the employer's action." *Rhodes*, 359 F.3d at 504 (citations and internal quotation marks omitted); *see also Chaib*, 744 F.3d at 982; *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013); *Morgan*, 724 F.3d at 995-96; *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1105 (7th Cir. 2012); *Everett*, 655 F.3d at 729 (explaining that circumstantial evidence is "evidence that points to discriminatory animus through a longer chain of inferences"). Circumstantial evidence typically falls into one of three categories: "(1) ambiguous statements or behavior towards other employees in the protected group; (2) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (3) evidence that the employer offered a pretextual reason for an adverse employment action." *Diaz v. Kraft Foods Global, Inc.*, 653 F.3d 582, 587 (7th Cir. 2011); *see also Chaib*, 744 F.3d at 982; *Perez*, 731 F.3d at 711; *Morgan*, 724 F.3d at 995-96; *Coleman*, 667 F.3d at 860; *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir. 2011). To overcome summary judgment, circumstantial evidence need not "combine to form a tidy, coherent picture of discrimination, in the same way the tiles of a mosaic come together to form a

tidy, coherent image, in order for a plaintiff to survive summary judgment." *Morgan*, 724 F.3d at 997. Rather, "[i]f the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action, then summary judgment for the defendant is not appropriate, and the plaintiff may prevail at trial even without producing any 'direct' proof." *Id*. at 996.

As shown in the Background section, the record includes no admissible evidence, direct or circumstantial, that Windmon selectively targeted women for adverse treatment or men for preferential treatment. It follows that Bridgeforth cannot succeed under the direct method. *See Brown*, 700 F.3d at 1106 (finding no triable issue of fact because "there is no evidence that [the supervisors' criticisms] were unfair *because they were motivated by race*, as Title VII forbids").

Nor can she succeed under the indirect method. That method, first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), has three steps. First, the plaintiff must make out a *prima facie* case of discrimination, which requires her to establish that (1) she is a member of a protected class, (2) her job performance met her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) another similarly situated individual who was not in the protected class was treated more favorably than she was. *See Coleman*, 667 F.3d at 845. Second, if the plaintiff makes out a *prima facie* case, "[t]he burden … shift[s] to the employer to articulate some legitimate, nondiscriminatory reason" for its action. *Ibid.* (quoting *McDonnell Douglas*, 411 U.S. at 802). Third, if the defendant articulates a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff, who must provide evidence that the defendant's stated reason is pretextual. *Ibid.*

Bridgeforth cannot establish a *prima facie* case under the indirect method. Defendants do not dispute that Bridgeforth is a member of a protected class and that she was meeting legitimate

15

expectations. Doc. 36 at 9. But even if Bridgeforth suffered an adverse employment action, she has failed to identify with admissible evidence another similarly situated individual outside of the protected class—that is, a man—who received more favorable treatment. Bridgeforth objects that requiring her to show that males have not been harassed would demand that she "prove a negative." Doc. 46 at 7. Yet that is what the indirect method requires, and all Bridgeforth had to do was adduce some evidence identifying a similarly situated male co-worker who was not subject to the similar adverse treatment by Windmon. *See Arizanovska v. Wal-Mart Stores, Inc.*, 682 F.3d 698, 702-03 (7th Cir. 2012) ("The similarly-situated inquiry is a flexible, common-sense one, but it at least requires that the plaintiff *name a comparator* outside her protected class.") (emphasis added) (citation and internal quotation marks omitted); *Mustafa v. Ill. Prop. Tax Appeal Bd.*, 67 F. Supp. 3d 988, 998 (N.D. Ill. 2014) (granting summary judgment where the plaintiff "has not identified a similarly situated employee outside of his protected class(es) who behaved similarly but was treated more favorably than" he was). Because she failed to adduce such evidence, she cannot prevail under the indirect method. *See Chaib*, 744 F.3d at 984 (holding that the plaintiff failed under the indirect method because she had "not shown that any nonfemale, non-French individual was subject to different treatment than the treatment of which she complains").

Because Bridgeforth has failed to provide any evidence that Windmon mistreated her because she was female, no reasonable jury could conclude that she was discriminated against on the basis of her sex. *See id*. at 985 ("Therefore, because Chaib has also failed to provide sufficient evidence to link any such action to her gender or national origin, this Court affirms the district court's grant of summary judgment as to Chaib's claims for discrimination under Title VII based on disparate treatment."); *Davis*, 651 F.3d at 678 (affirming summary judgment for

defendants because the record "would not permit a reasonable jury to infer that Davis was discriminated against on the basis of his race"). As noted, this provides a separate ground, independent of Bridgeforth's failure to show a materially adverse employment action, for summary judgment on her Title VII sex discrimination claim.

**Conclusion**

Defendants' summary judgment motion is granted. In so holding, the court makes no judgment as to whether Windmon was a good boss or colleague. But unpleasantness and immaturity in the workplace, while regrettable, does not by itself violate Title VII's prohibition against sex discrimination. Judgment will be entered in favor of Defendants and against Bridgeforth.

October 13, 2015

United States District Judge